1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMY BOWMAN,

                            Plaintiff,

        v.

NANCY A. BERRYHILL,[1]

                          Defendant.

CASE NO. C16-1059JLR

ORDER REVERSING AND
REMANDING FOR FURTHER
ADMINISTRATIVE
PROCEEDINGS

## I.      INTRODUCTION

Plaintiff Amy Bowman seeks review of the denial of her application for disability

insurance benefits.  Ms. Bowman contends that the Administrative Law Judge ("ALJ")

erred in evaluating the medical evidence, evaluating Ms. Bowman's testimony, assessing

her residual functional capacity ("RFC"), and finding her capable of performing work

available in the national economy.  (Op. Br. (Dkt. # 9) at 1-2.)  Having considered the

submissions of the parties, the relevant portions of the record, and the applicable law, the

court REVERSES Defendant Commissioner Nancy A. Berryhill's  ("the Commissioner")

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security
Administration.  Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is
substituted for Carolyn W. Colvin as Defendant in this suit.  The clerk is directed to update the
docket, and all future filings by the parties should reflect this change.

1 final decision and REMANDS the matter for further administrative proceedings under

2 sentence four of 42 U.S.C. § 405(g).

3

## II. BACKGROUND

4     On July 31, 2013, Ms. Bowman protectively filed an application for disability

5 insurance benefits. (Administrative Record ("AR") (Dkt. # 7) at 15.) Ms. Bowman's

6 application was denied initially and on reconsideration. (*Id.*) The ALJ conducted a

7 hearing on January 13, 2015, at which Ms. Bowman alleged an amended disability onset

8 date of May 1, 2013. (*Id.*) After the hearing, the ALJ issued a decision finding Ms.

9

10 Bowman not disabled. (*Id.* at 15-24.)

11     The ALJ utilized the five-step disability evaluation process in his decision,[2] and

12 the court summarizes the ALJ's findings as follows:

13     **Step one**: Ms. Bowman has not engaged in substantial gainful activity since May
1, 2013, the amended alleged onset date.

14

15     **Step two**: Ms. Bowman has the following severe impairments: Chiari I
malformation, cervical degenerative disc disease, chronic fatigue syndrome,
obesity, history of fibromyalgia, history of sleep disorder, history of asthma, and

16     nicotine addiction.

17     **Step three**: Ms. Bowman does not have an impairment or combination of
impairments that meets or equals the requirements of a listed impairment.[3]

18

19     **RFC**: Ms. Bowman can perform sedentary work as defined in 20 C.F.R.
§ 404.1567(a). She can perform unskilled, repetitive, and routine work. She can

20     have occasional contact with the public, coworkers, and supervisors. She will be
off task up to 14 percent of the time but will still meet minimum production

21     requirements of the job. She will be absent from work one time every three

22

    [2] 20 C.F.R. § 416.920.

23

    [3] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER - 2

1   months.  She can occasionally stoop, squat, crouch, crawl, and kneel.  She can
2   occasionally climb ramps and stairs.  She can never climb ladders, ropes, or
    scaffolds.

3   **Step four**: Ms. Bowman is unable to perform any past relevant work.

4   **Step five**:  Because jobs exist in significant numbers in the national economy that
5   Ms. Bowman can perform, she is not disabled.

6   (*See* AR at 17-24.)  The Appeals Council denied Ms. Bowman's request for review,

7   making the ALJ's decision the Commissioner's final decision.  (*See* AR at 1-6.)[4]

8                             **III.    ANALYSIS**

9        Pursuant to 42 U.S.C. § 405(g), this court must set aside the Commissioner's

10  denial of social security benefits if the ALJ's findings are based on legal error or not

11  supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d

12  1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

13  1999)).

14  **A.    Evaluation of the Medical Evidence**

15       Ms. Bowman argues that the ALJ erred in evaluating the medical evidence in the

16  record.  (*See* Op. Br. at 3-15.)  Where the medical evidence in the record is not

17  conclusive, resolving questions of credibility and conflicts in the evidence is solely the

18  responsibility of the ALJ.  *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

19  In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

20  "must be supported by specific, cogent reasons."  *See Reddick v. Chater*, 157 F.3d 715,

22  ───────────────

23  [4] The court omits the rest of the procedural history in this matter because it is not relevant
    to the outcome of the case.

1  .725 (9th Cir. 1998). The ALJ can satisfy this requirement "by setting out a detailed and

2  .thorough summary of the facts and conflicting clinical evidence, stating his interpretation

3  thereof, and making findings." *Id.* The ALJ may also draw inferences "logically flowing

4  from the evidence." *Sample*, 694 F.2d at 642. Further, the court itself may draw

5  "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881

6  F.2d 747, 755 (9th Cir. 1989).

7      The ALJ must provide "clear and convincing" reasons for rejecting the

8  uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81

9  F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is

10  contradicted, that opinion "can only be rejected for specific and legitimate reasons that

11  are supported by substantial evidence in the record." *Id.* at 830-31.

12

13              **1.    Pamela Yung, M.D., and Philip Moberg, M.D.**

14      Ms. Bowman argues that the ALJ erred by failing to give specific and legitimate

15  reasons supported by substantial evidence to discount the opinions of treating physicians

16  Pamela Yung, M.D., and Philip Moberg, M.D. (*See* Op. Br. at 3-12.) The court agrees.

17      In 2014, Ms. Bowman's treating physicians completed medical opinion

18  questionnaires. (*See* AR at 614-15, 617-18.) Dr. Yung and Dr. Moberg both opined that

19  Ms. Bowman would need unscheduled breaks of 15 minutes or more on a daily or

20  near-daily basis and would miss work three or more days per month due to her

21  impairments. (*See* AR at 615, 618.) The ALJ gave little weight to their opinions because

22

23  //

they were "inconsistent with [Ms. Bowman's] longitudinal treatment history and her performance on physical examinations." (*See* AR at 22.)

The ALJ's broad statement is not sufficiently specific to show why he interpreted any supposedly conflicting evidence in favor of other opinions rather than those of the treating physicians. An ALJ may not reject a treating physician's opinion by stating that the opinion lacks support in the medical record without explaining why his conclusions, "rather than the doctors', are correct." *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

Regardless, substantial evidence does not support the ALJ's finding that Dr. Yung's and Dr. Moberg's opinions were inconsistent with Ms. Bowman's treatment history or physical examinations. The ALJ cited only a March 2014 examination in which a physician found that Ms. Bowman had normal gait and muscle tone. (*See* AR at 22 (citing AR at 599-600).) However, the ALJ fails to explain how findings of normal gait and muscle tone were inconsistent with the treating physicians' opinions. Dr. Yung and Dr. Moberg both regularly reported that Ms. Bowman had normal gait in their treatment notes. (*See, e.g.*, AR at 337, 586, 589, 628, 655.) They also reported MRI results indicating Chiari I malformation, limited range of motion, diffuse tenderness to palpation through all peripheral muscles and joints, and exam results consistent with fibromyalgia. (*See* AR at 444, 456, 586, 589.) Considering the entire treatment record, including Ms. Bowman's normal gait, Dr. Yung and Dr. Moberg opined that Ms. Bowman's impairments would prevent her from working without unscheduled breaks and

significant absenteeism. (*See* AR at 615, 618.)  The ALJ showed no inconsistency between the record and their opinions.

Moreover, an ALJ should generally give treatment providers' opinions more weight than the opinions of sources who do not treat a claimant because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *See* 20 C.F.R. § 404.1527(d)(2).  Particularly considering that the ALJ rejected the opinions of Ms. Bowman's treating physicians in favor of opinions of non-examining state agency medical consultants (*see* AR at 22), the ALJ erred by failing to provide sufficient reasons for doing so.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)).  "[I]n each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Id.*  Therefore, "an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)).  Here, because the ALJ improperly discounted Dr. Yung's and Dr. Moberg's opinions in assessing the RFC and found Ms.

//

1  Bowman capable of performing work based on that RFC, the errors affected the ultimate

2  disability determination and are not harmless.

### 2.    Christopher Nelson, Ph.D.

4        Ms. Bowman next argues that the ALJ erred by failing to give a specific and

5  legitimate reason supported by substantial evidence to discount the opinion of examining

6  psychologist Christopher Nelson, Ph.D. (*See* Op. Br. at 13-16.)  The court agrees.

7        In November 2013, Dr. Nelson examined Ms. Bowman and opined that she would

8  have moderate difficulty understanding, remembering, persisting at tasks, performing

9  activities within a schedule, maintaining regular attendance, being punctual, learning new

10  tasks, adapting to change, and making work-related decisions. (*See* AR at 526.)  The

11  ALJ gave this opinion only some weight because the record did not show that limitations

12  in persisting at tasks or performing under stress were "the result of mental impairments

13  given [Ms. Bowman's] lack of specific mental health treatment." (*See* AR at 22.)

15        However, according to the Ninth Circuit, that a claimant "may be one of millions

16  of people who did not seek treatment for a mental disorder until late in the day is not a

17  substantial basis on which to conclude that [a physician's] assessment of [that] claimant's

18  condition is inaccurate." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).  When

19  a mental illness is involved, an assumption that a failure to seek treatment suggests a lack

20  of need for treatment may be illogical.  It may be illogical in part because a person

21  suffering from a mental illness may not realize that her "condition reflects a potentially

22  serious mental illness." *See id*.  "'[I]t is a questionable practice to chastise one with a

1  mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Id.*

2  (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)).

3       Furthermore, Ms. Bowman's primary care provider Dr. Yung diagnosed her with

4  major depressive disorder, listed it as an active condition throughout her treatment notes,

5  and prescribed Ms. Bowman medication for depression and anxiety. (*See, e.g.*, AR at

6  365-68, 528-31, 563-65, 633.) Therefore, the ALJ's reason for discounting Dr. Nelson's

7  opinion is also unsupported by substantial evidence. Because the ALJ improperly

8  discounted Dr. Nelson's opinion in assessing the RFC, the ALJ committed harmful error

9
10  here as well.[5]

11       **B.    Evaluation of Ms. Bowman's Testimony**

12       Ms. Bowman argues that the ALJ erred in evaluating her subjective complaints.

13  (*See* Op. Br. at 15-18.) The court agrees.

14       Questions of credibility are solely the responsibility of the ALJ. *See Sample*, 694

15  F.2d at 642. The court may not second-guess these credibility determinations. *Allen v.*

16  *Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). To reject a claimant's subjective complaints,

17  the ALJ must provide "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834

18  (citation omitted). The ALJ "must identify what testimony is not credible and what

19  evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d

20  915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering,

21
22       [5] Ms. Bowman argues that the ALJ's error in evaluating Dr. Nelson's opinion also led to an erroneous finding at step two that Ms. Bowman had no severe mental impairments. (*See* Op.
23  Br. at 12-15.) While any error at step two was harmless here because the ALJ found other severe impairments and proceeded with the sequential evaluation process, the ALJ must make new step-two findings on remand.

1    the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."

2    *Lester*, 81 F.2d at 834.

3         Here, the ALJ discounted Ms. Bowman's testimony for several reasons, none of

4    which are clear, convincing, and supported by substantial evidence.   First, the ALJ found

5    it "reasonable to presume that if [Ms. Bowman's] stress improved so [too] would her

6    impairments." (*See* AR at 21.)  At the hearing, the ALJ asked Ms. Bowman if her illness

7    is exacerbated by stress, to which Ms. Bowman replied that her illness "gets worse" if she

8    stresses. (*See* AR at 37.)  From this testimony, the ALJ inferred that Ms. Bowman's

9    testimony regarding the limiting effects of her impairments could be discounted because

10   they would improve if she were under less stress. (*See* AR at 21.)  However, in stating

11

12   that stress worsened her condition, Ms. Bowman was not necessarily testifying that stress

13   was the determining factor.  In fact, Ms. Bowman went on to describe at the hearing how

14   even with accommodations to lower her stress at work, she was unable to stay employed.

15   (*See* AR at 38.)  Substantial evidence does not support the ALJ's attenuated inference.

16        Next, the ALJ noted that Ms. Bowman's chronic conditions "did not prevent work

17   in the past." (*See* AR at 20.)  To the contrary, the record shows that, under a doctor's

18   recommendation, Ms. Bowman's last employer accommodated her need to work no more

19   than 25 hours per week but that Ms. Bowman was unable to maintain that schedule due to

20   her impairments. (*See* AR at 272-73.)

21

22        The ALJ also noted that Ms. Bowman's activities, such as driving and watching

23   TV, were inconsistent with her alleged vision difficulties. (*See* AR at 22.)  However, Ms.

ORDER - 9

Bowman stated in one function report that she was unable to see well. (*See* AR at 208.) Ms. Bowman ultimately did not seek to establish disability due to a vision impairment; she alleged at the hearing that her chronic pain, fatigue, and depression affected her ability to work. (*See, generally*, AR at 32-62.)  Therefore, any inconsistency between the function report and Ms. Bowman's activities does not constitute a clear and convincing reason to discount her testimony regarding her allegedly disabling symptoms.

Finally, the ALJ discounted Ms. Bowman's testimony because "the medical evidence [did] not substantiate [her] allegations of disabling limitations." (*See* AR at 20, 22.)  However, an ALJ may not reject a claimant's testimony solely on the basis of a lack of objective medical evidence in the record.  *See Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995).  Because none of the other reasons that the ALJ provided for discounting Ms. Bowman's testimony was clear, convincing, and supported by substantial evidence, the ALJ's analysis of Ms. Bowman's testimony may not be upheld on this reason alone.  Therefore, the ALJ erred here as well.

## C.   The RFC Assessment and Step-Five Finding

Ms. Bowman argues that the RFC and step-five finding are not supported by substantial evidence due to the errors alleged above. (*See* Op. Br. at 18.)  The court concludes that because the ALJ erred in evaluating the medical evidence and Ms. Bowman's testimony, the RFC and the resulting step-five finding were not supported by substantial evidence and were in error.

ORDER - 10

**D.     Remand for Further Proceedings**

The court may remand this case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy" that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Here, factual issues remain regarding Ms. Bowman's functional capabilities and her ability to perform other jobs existing in significant numbers in the national economy, in light of any additional limitations. Accordingly, the court concludes that remand for further consideration is warranted.

ORDER - 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

# IV.    CONCLUSION

For the foregoing reasons, the court REVERSES the Commissioner's final

decision and REMANDS this case for further administrative proceedings under sentence

four of 42 U.S.C. § 405(g).

DATED this _____ day of February, 2017.


JAMES L. ROBART
United States District Judge

ORDER - 12